N.A.M. ENTERPRISES, INC., Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent; EDWARD EUGENE BARBER, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
N.A.M. Enterprises, Inc. v. Commissioner
Docket Nos. 3919-89, 4793-89
United States Tax Court
T.C. Memo 1991-142; 1991 Tax Ct. Memo LEXIS 161; 61 T.C.M. (CCH) 2278; T.C.M. (RIA) 91142; March 27, 1991, Filed *161 Decision wil be entered for the respondent in the case at Docket No. 3919-89. Decision will be entered under Rule 155 in Docket No. 4793-89 to reflect respondent's concession. Edward Eugene Barber, pro se. Roslyn D. Grand, for the respondent. SCOTT, Judge. POWELL, Special Trial Judge. SCOTT MEMORANDUM OPINION These cases were assigned to Special Trial Judge Carleton D. Powell pursuant to the provisions of section 7456 (redesignated as section 7443A by the Tax Reform Act of 1986, Pub. L. 99-514, section 1556, 100 Stat. 2755) and Rule 180 et seq. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE POWELL, Special Trial Judge: Respondent determined the following deficiencies and additions to tax: N.A.M. *162 ENTERPRISES, INC. Additions to Tax
Year
Deficiency
§ 6653(a)(1)
§ 6653(a)(2)
1984
$ 4,327.44
$ 216.37
*
1985
2,948.90
149.29
*
1986 [2]
2,002.95
100.14
*
EDWARD EUGENE BARBER
Additions to Tax
Year
Deficiency
§ 6653(a)(1)
§ 6653(a)(2)
§ 6661
1984
$ 8,710.00
$ 435.00
*
$ 2,178.00
1985
2,890.00 -0- -0-
-0-
Petitioners filed timely petitions in which N.A.M. claimed an overpayment for the 1986 taxable year in the amount of $ 337,556 [3] *163 and Mr. Barber claimed an overpayment for the 1984 taxable year in the amount of $ 100,000. After concessions, the issues for decision are whether N.A.M. and Mr. Barber are entitled to casualty loss deductions under section 165. [4] The facts are as follows. *164 Prior to May 2, 1984, Mr. Barber rented a home at 1223 Lynway Lane, Atlanta, Georgia. On March 21, 1984, he purchased bedroom and living room furniture for $ 5,370.91. Of the purchase price $ 4,830 was financed by the seller. On May 2, 1984, Mr. Barber purchased 1223 Lynway Lane for $ 86,000. The settlement statement indicates that Mr. Barber paid $ 22,719.32, and the balance was financed by the Associates Financial Services of America. On June 28, 1984, Mr. Barber executed a second mortgage in favor of Fidelity National Bank to secure a loan in the amount of $ 14,420 of which $ 8,200 was paid for certain improvements and to have a central air conditioning system installed. The contract for these improvements states that Mr. Barber was the owner of the property. In late July, 1984, a fire damaged the home and its contents. On August 17, 1984, Mr. Barber reported a theft of "patio" furniture from the 1223 Lynway property. The police report states that the value of the furniture was $ 5,000. [5]
*165 Mr. Barber filed an insurance claim for a total amount of $ 120,137.58 with the Wausau Insurance Company. Mr. Barber was the owner of the insurance policy. Wausau paid $ 67,619 to Associates and $ 6,918 to Fidelity. It also paid Mr. Barber $ 5,000. Wausau refused to make any further payments. Mr. Barber sued Wausau under the policy, and Wausau counterclaimed. The case was tried to a jury. Based on the verdict of the jury, Mr. Barber's case was dismissed and on February 14, 1986, a judgment was entered against Mr. Barber on Wausau's counterclaim in the amount of $ 67,619. The judgment of the trial court was affirmed by the Court of Appeals of the State of Georgia on October 7, 1987. See Barber v. Wausau Underwriters Insurance Co., 184 Ga. App. 479, 362 S.E.2d 109 (1987). The Court of Appeals noted that "the conflict in the evidence (which included testimony that the true value of the damages claimed had been inflated far in excess of the face value of the policy) was properly before the jury." 184 Ga. App. at 480, 362 S.E.2d at 110. On April 19, 1984, The National Association of Marketing and Research Company, *166 Inc. (herein N.A.M.) was incorporated. Mr. Barber was a shareholder of N.A.M.; it is unclear whether he was the sole stockholder. On July 1, 1984, N.A.M. purportedly entered into employment and lease contracts with Mr. Barber. These agreements appear to have been prepared by Mr. Barber. The lease agreement purported to lease the 1223 Lynway property and its contents to Mr. Barber for $ 2,083.37 per month. With the exception of MR. Barber's testimony and unaudited financial statements apparently prepared by Mr. Barber, there is no evidence that this property or the contents were transferred by Mr. Barber to N.A.M. On his original income tax return for 1984, Mr. Barber did not claim any deduction for a casualty loss. In February 1986, Mr. Barber filed an amended 1984 return claiming a casualty loss for 1) real estate ($ 70,000), house contents ($ 84,079 ($ 89,079 less $ 5,000 insurance received)), and patio furniture ($ 5,000). Upon examination, respondent determined that Mr. Barber was entitled to a casualty loss as follows: Amount claimed per insurance claim
$ 120,238
Less insurance proceeds
First mortgage
$ 67,619
Second mortgage
6,918
Insured (Mr. Barber)
5,000
79,537
Net Loss
$  40,701
Less limitations
$ 100 each casualty
100
10% of adjusted gross income
7,776
7,876
Deductible Loss
$  32,825
*167 On N.A.M.'s corporate tax return for 1984, executed by Mr. Barber, no deductions were claimed for a casualty loss. In September 1986, N.A.M. filed an amended return, executed by Mr. Barber, claiming a net operating loss deduction in the amount of $ 123,269. Attached to that return was a copy of the claim filed with Wausau with respect to the fire at 1223 Lynway and copies of police reports of alleged thefts from that property. Upon examination, respondent determined that no loss deduction was allowable. As we understand, Mr. Barber's and N.A.M.'s argument at trial is that prior to the fire Mr. Barber transferred his interest in the 1223 Lynway property to N.A.M. in exchange for stock in N.A.M. Accordingly, N.A.M. is entitled to a casualty loss. Mr. Barber also claims that he is entitled to a casualty loss for the contents of the house. Respondent takes the position that Mr. Barber is entitled to a casualty loss deduction for the property and contents, but that this deduction does not exceed the $ 32,825 allowed by respondent. There is no reliable evidence in this record that there was a transfer of any interest, whether legal or equitable, in the 1223 Lynway property from *168 Mr. Barber to N.A.M. Mr. Barber agrees that he made all the mortgage payments that were made. He continued to reside with his family in the house. He claimed an insurable interest in the property, and when the property was damaged, Mr. Barber filed a claim and the law suit in his name. Nor are we persuaded by the "lease agreement" that any transfer was made. There is no evidence that Mr. Barber made any payments of rent to N.A.M. While the agreement provided that N.A.M. would provide all utilities, there is no indication that this in fact was the situation. We note further that the lease provided that the contents were also included, a position which is directly contrary to Mr. Barber's current claim. Likewise, the 1984 balance sheets of N.A.M. showing that certain real estate with a book value of $ 85,000 was owned by the corporation do not convince us. In every contact with third parties Mr. Barber had indicated that he owned the Lynway property. Whatever legerdemain the corporate records may indicate, they fall far short of establishing that N.A.M. owned the property. In short, the purported transfer, even if intended (which we doubt), was not made, and Mr. Barber owned *169 the property and its contents. We turn next to the question of the amount of the casualty loss suffered by petitioner. Respondent does not dispute that Mr. Barber is entitled to a casualty loss deduction for the taxable year 1984 under sections 165(a) and 165(c). Mr. Barber does not dispute the section 165(h) adjustments, but rather he contends that the amount of the loss is greater than that allowed by respondent. Generally, the amount of loss deductible is determined by subtracting the fair market value of the property immediately after the casualty from the fair market value immediately before the casualty. See section 1.165-7(a)(2), Income Tax Regs. The problem encountered here is that, even if we are willing to assume that the fair market value of the property after the fire was zero, [6] we do not have reliable information as to the value of the property before the fire. Mr. Barber relies on a list, which was apparently prepared by him, that provided the alleged value of the contents of each room in the house. The total value indicated by that list is $ 89,078.63. We have absolutely no confidence in that value. Mr. Barber's testimony was vague as to the contents of *170 the rooms. Furthermore, Mr. Barber testified as to his employment record prior to his association with N.A.M., and we find it incredible that he could have accumulated property of that value from those earnings, particularly when he was supporting three dependents and apparently paid approximately $ 22,700 when he purchased the property. Finally, we note that Mr. Barber's claim filed with Wausau stated that the total loss was $ 120,235. Mr. Barber has the burden of showing that the amount of his loss exceeded $ 120,235. See Rule 142(a). Construing the facts totally in his favor, this record only demonstrates that his loss would have been the house ($ 94,200 (purchase price plus $ 8,200 for air conditioning and other improvements)) and the furniture purchased in March ($ 5,370). But, even if the house had been totally destroyed, the land still had value, and we note *171 that, on his amended 1984 return, Mr. Barber only claimed a $ 70,000 loss for the property. In addition, Wausau paid Mr. Barber $ 5,000. Thus, in respondent's computation, the allowance for other personal contents is more than $ 50,000. In short, Mr. Barber has failed to convince us that his loss was in a greater amount than allowed by respondent. If anything, from this record, it appears that respondent was generous. While petitioners have not addressed the additions to tax under section 6653(a) and section 6661, both petitioners concede that they understated their gross incomes by significant amounts. We have reviewed the financial records that are in the record and find that petitioners did not maintain adequate books and records and that deductions and credits were claimed that had no bases in fact. Accordingly, respondent's determinations as to the additions to tax are sustained. Decision will be entered for the respondent in the case at Docket No. 3919-89. Decision will be entered under Rule 155 in Docket No. 4793-89 to reflect respondent's concession. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and effect for the years in issue, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure.↩
*. The amounts of the additions to tax under section 6653(a)(2) are 50 percent of the interest determined under section 6601.↩
2. For the 1986 taxable year, the additions to tax are inposed under sections 6653(a)(1)(A) and 6653(a)(1)(B). For the purposes here there is no difference between these sections and the corresponding provisions for the prior years.↩
3. In its second amended petition, N.A.M. reduced the claimed overpayment to $ 52,711.↩
4. Respondent reconstructed both petitioners' incomes. The correctness of these reconstructions was conceded at trial; respondent, however, also conceded that there was a $ 5,000 error in the reconstruction of Mr. Barber's 1984 taxable income. N.A.M. claimed various credits under section 38 in its 1984 tax return. Respondent disallowed those credits. These credits are not discussed in N.A.M.'s brief and we assume, therefore, that the issues have been abandoned. In any event, with the exception of Mr. Barber's vague testimony, there is nothing in the record to support the entitlement to these credits, and if the credit issues were not abandoned, we find that petitioner has not established any bases for claiming the credits. Similarly respondent disallowed an interest deduction claimed by Mr. Barber. Again the issue is not raised in his brief, and there is nothing in the record to indicate that he is entitled to a greater deduction than respondent allowed.↩
5. The amended returns refer to a theft loss. Mr. Barber's testimony focused on the casualty loss from the fire. We assume, therefore, that the issue has been abandoned. In any event, with the exception of the police report, there is nothing in the record to support a theft loss deduction under section 165.↩
6. This assumption is somewhat dubious in view of the comments of the Court of Appeals for the State of Georgia in Mr. Barber's suit against Wausau.↩